## MEDALLION BANK
## SIMPLE INTEREST NOTE
## AND SECURITY AGREEMENT
### This is a consumer credit transaction.

| Borrower: Name and Address | Co-Borrower: Name and Address |
|---|---|
| LARRY S ROGERS | N/A |

**Meaning of Words.** This agreement is a simple interest note and security agreement (the "Note"). In this Note, the words "you," "your," and "yours" refer to the Borrower and Co-Borrower. The words "we," "us," "our," and "Lender" refer to Medallion Bank, a Utah industrial bank, with its principal address at 1100 East 6600 South, Suite 510, Salt Lake City, Utah 84121, and its assignees. The word "Property" refers to the Property described below. Medallion Bank, and not the seller of the Property ("Seller"), is the Lender in this transaction.

**Description of Property.** As security for this loan, you are giving Lender a purchase money security interest in the following Property, which you represent will be used only for recreational purposes and not as a dwelling or residence, and all additions and attachments.

| NEW/USED | YEAR  MAKE  MODEL | BODY / HULL TYPE | SERIAL NO./VIN |
|---|---|---|---|
| Used | 2008 YAMAHA AR 230 HO | Feet | YAMC1551B808 |
| Used / Used | 2008 YAMAHA 150 / 2008 YAMAHA 150 | 0.00 HP / 0.00 HP | 1024362 / 1024363 |
| Used | 2008 METAL FABRICATION TRAILER | 0 | 4J2BDTU2381095803 |

**Promise to Pay.** You promise to pay to us or our order the principal sum identified below as the "Amount Financed" (U.S. Dollars) plus interest at the simple annual interest rate identified below as the "Annual Percentage Rate" ("Interest Rate"). You promise to make payments in accordance with the "Payment Schedule" below. You promise to make payments on or before the same day of each month as the first payment due date. Payments and other credits will be applied as required by law. You promise to pay all other amounts that may become due under the terms of this Note. Each person who signs this Note as Borrower or Co-Borrower is individually liable for the sums owed under this Note.

### TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 17.95 % | $ 39,043.42 | $ 27,078.50 | $ 66,121.92 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Each Payment | When Payments Are Due | | Or As Follows |
|---|---|---|---|---|
| 144 | $459.18 | Monthly, Beginning | 06/01/2015, | N/A |
| N/A | N/A | final payment due 05/01/2027, | | N/A |

**Late Charge.** If a payment is not paid in full within 10 days after it is due, you will pay a late charge of the greater of $30 or 5% of the unpaid amount of the late payment.

**Prepayment.** You may prepay all or any portion of your debt under this Note at any time without penalty.

**Security Interest.** You are giving a security interest in the Property being purchased.

**Additional Information.** Please read this Note, including all 4 pages, for additional information about security interests, non-payment, default, penalties, prepayment refunds, and any required repayment in full before the scheduled date.

**REMAINDER OF PAGE INTENTIONALLY BLANK. PLEASE CONTINUE TO PAGES 2, 3 AND 4.**

## ITEMIZATION OF THE AMOUNT FINANCED:

You authorize us to pay the proceeds of your loan with us as follows: (Seller name and address)
To SEBRITE CORP AGENT FOR: TEXAS BOAT SALES, 14599 FM 1097 WEST, Willis, TX 77318 .................................................. $ 27,078.50
Amount Financed .................................................. $ 27,078.50

| YOUR TRANSACTION WITH THE SELLER IS SUMMARIZED AS FOLLOWS: | |
|---|---|
| Cash Price of Property | $ 27,800.00 |
| Cash Down Payment | ($ 2,780.00) |
| Net Trade-in Allowance | ($ 0.00) |
| Subtotal | $ 25,020.00 |
| **Public Official Fees** | |
| License Fee | $ 196.00 |
| Certificate of Title Fee | $ 0.00 |
| Registration Fee | $ 0.00 |
| Taxes | $ 1,737.50 |
| To N/A for N/A | $ 0.00 |
| Subtotal | $ 1,933.50 |
| **Third Party Fees (Seller may retain or receive a portion of these amounts)** | |
| Credit Life Insurance | $ 0.00 |
| Credit Disability Insurance | $ 0.00 |
| Service Contract (Optional) to N/A | $ 0.00 |
| Gap Contract (Optional) to N/A | $ 0.00 |
| To Seller for Documentation Fee | $ 125.00 |
| To N/A for N/A | $ 0.00 |
| To N/A for N/A | $ 0.00 |
| Subtotal | $ 125.00 |
| **Total** | $ 27,078.50 |

Florida Tax. If executed in Florida, the Florida documentary stamp tax required by law in the amount shown above will be paid directly to the Department of Revenue. Certificate of Registration No. 78-8013498263-9.

YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE. YOUR DECISION WILL NOT BE A FACTOR IN OUR CREDIT DECISION MAKING PROCESS. YOU MAY PURCHASE CREDIT LIFE AND/OR ACCIDENT AND HEALTH INSURANCE FROM THE INSURER AND THROUGH THE INSURANCE PRODUCER OF YOUR CHOICE, WITHOUT AFFECTING OUR CREDIT DECISION. If you purchase credit life and/or credit disability insurance from or through the Seller, you must complete the following:

**CREDIT LIFE:**
_____ FOR BORROWER
_____ FOR CO-BORROWER
_____ FOR BOTH BORROWERS

PREMIUM $ 0.00     TERM N/A

**CREDIT DISABILITY:**
_____ FOR BORROWER
_____ FOR CO-BORROWER
_____ FOR BOTH BORROWERS

PREMIUM $ 0.00     TERM N/A

I want the credit insurance specified above:

N/A                                   05/02/2015
BORROWER                              DATE

I want the credit insurance specified above:

N/A                                   N/A
CO-BORROWER                           DATE

## OTHER IMPORTANT PROVISIONS

**Location of Property.** You will notify the Lender immediately in writing of any change in your address or the address where the Property is regularly located.

**Payment.** Time is of the essence in this Note. You agree to promptly pay us all you owe under this Note even if the Property is damaged, destroyed, missing, or uninsured. Any payment amount that you remit shall be applied in the manner stated on page one (1), with all other charges, if any (including without limitation all charges for repair bills, storage bills, taxes, assessments, fees, fines, and other charges on the Property which we pay), due upon demand or upon termination of this Note or as we otherwise designate. Acceptance by us of partial payments shall not modify the terms of this Note and shall not constitute a waiver of any subsequent default. Any amount of a payment received that is greater than the amount then due and outstanding will be applied to principal and will not extend the due date of the next payment.

**Prepayment.** You may prepay this Note in full or in part at any time without penalty. Since the unpaid balance does not include any unearned interest, no refund of interest is required and none will be given.

**Ownership and Risk of Loss.** You agree that you will take the following action to protect the Lender's security under this Note: (a) maintain the Property in good condition; (b) keep the Property principally at the address you have designated on page one (1), and notify us before you begin to keep the Property principally at another location; (c) pay all taxes, fees, fines, bills, and any other charges assessed or levied against the Property; (d) notify us immediately if any authority impounds the Property; (e) not expose the Property to misuse or confiscation; (f) not permit the Property to be used for hire or permit the Property to be used illegally or contrary to the terms of the insurance policies required by this Note; (g) not permanently remove the Property from your state of residence disclosed on page one (1) of this Note or register the Property in another state, without our prior written consent; (h) not take the Property outside the United States or Canada without our prior written consent; (i) not sell, transfer, or assign your right, title, or interest in the Property without our prior written consent; and (j) not allow any lien, encumbrance, or security interest against the Property other than ours without our prior written consent.

**Security Interest.** You hereby grant us a security interest in the Property and in all accessories, equipment, and replacement parts installed in the Property. This security interest also covers: (a) insurance premiums and charges for service contracts financed with the proceeds of this Note; (b) proceeds of any insurance policies or service contracts covering the Property; (c) proceeds of any insurance policies on your life or health which are financed with the proceeds of this Note; and (d) proceeds of any sale of the Property. This secures payment of all amounts you owe under this Note and in any transfer, renewal, extension, modification, refinancing, or assignment of this Note. It also secures your other agreements in this Note. To the extent permitted by applicable law, you authorize us as your attorney-in-fact to sign your name on any documents necessary to properly record and perfect our security interest should you fail to do so.

**Required Physical Damage Insurance.** You agree to keep the Property insured at your own expense against all loss or damage with a deductible not greater than $500. Such insurance must be for not less than the actual cash value of the Property, and in the event of the Property's total loss resulting in an insurance settlement for less than the total outstanding balance under this Note (including principal, interest, and any other charges), you will be liable to us for the difference. <u>You may obtain such insurance from any company you choose, except that we reserve the right to refuse, for reasonable cause, any insurance that you offer.</u> The physical damage insurance must name the Lender as loss payee and must require 10 days advance written notice to the Lender before any cancellation or reduction in the insurance coverage. You authorize us as your attorney-in-fact to endorse your name on any check we receive for insurance proceeds, to the extent permitted by law. Unless you provide us with evidence of the insurance coverage required by this Note, to the extent permitted by applicable law, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, also protect your interests. If the Property becomes damaged, the coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by this Note. If we purchase insurance for the Property, you will be responsible for the costs of that insurance. The cost of the insurance may be added to your loan balance. If the cost is added to the loan balance, the Interest Rate on the Note will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The costs of the coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

**Late Charge.** You will pay a late charge on the unpaid amount of each payment received by us more than ten (10) days late. The charge is shown on page one (1) of this Note. Acceptance of a late payment or late charge does not mean that you can keep making payments later than the due date. We may also exercise any other remedies available to us under this Note.

**Events of Default.** Any of the following constitutes a default under this Note, as permitted by applicable law: (a) we do not receive any payment when due; or (b) our prospect of payment, performance, or realization of collateral is significantly impaired, which may include: (1) you fail to perform any obligation under this Note or any other agreement with us; (2) any information furnished in connection with this Note proves to have been false or materially misleading; (3) you sell or transfer your interest in the Property; (4) you experience any adverse financial change that we consider material; (5) you generally fail to meet debt obligations as they become due; (6) any proceeding is commenced or petition filed under any bankruptcy or insolvency law by or against you; (7) you die or become incompetent or incapacitated; (8) the Property is levied upon or seized under any legal process; (9) the Property is lost, stolen, or suffers substantial damage; or (10) you use the Property as a residence. To the extent required by applicable law, we bear the burden of establishing significant impairment.

**Rights and Remedies upon Default.** If you default under this Note, we can demand that you pay all you owe on this Note at once. To the extent not prohibited by applicable law, if you default, we do not have to give you notice that we intend to demand or are demanding that you pay all that you owe at once. We also will have all rights, options, and remedies of a secured party under applicable laws, and under this Note, including without limitation the following: (a) you must deliver the Property to us if we so direct; (b) with or without demanding delivery from you, and with or without resorting to legal process, we may repossess the Property and to do so we may peacefully and lawfully enter upon the property where the Property is kept; (c) you authorize us, at our option and without obligation to do so, to make or have made any repairs that we deem desirable; (d) you authorize us, at our option without obligation to do so, to pay insurance premiums covering the Property, as well as repair or storage bills, taxes, fees, fines or other charges on the Property, and you agree that we may, at our option, receive from you full reimbursement upon demand; and (e) if there is any personal property in the Property at the time we take possession of the Property, we will store it for you for a reasonable time after which we may dispose of it in a commercially reasonable manner and apply the proceeds to the amounts you owe us. Unless required by applicable law, we will not notify you of our intention to repossess the Property. You acknowledge an express intent to grant a security interest in the Property and hereby waive and abandon, to the extent permitted by law, all personal property exemptions granted upon the Property, which is the subject of this Note. NOTICE: BY GIVING US A SECURITY INTEREST IN THE PROPERTY, YOU WAIVE, TO THE EXTENT PERMITTED BY LAW, ALL RIGHTS PROVIDED BY LAW TO CLAIM SUCH PROPERTY EXEMPT FROM PROCESS.

**Collection Costs.** You agree to pay all costs and expenses we incur in collecting any late payment or in enforcing any term, condition, or covenant of this Note, including reasonable attorneys' fees and court costs, to the extent permitted by applicable law. If you reside in Iowa, and the amount financed is $25,000 or less, you will pay only those costs and expenses we incur in realizing on our security interest. If you reside in Utah, and we hire a third party collection agency or attorney to collect what you owe, in addition to the debt, you will pay the actual amount we are required to pay to the third party collection agency and/or the attorney, regardless of whether that amount is a specific dollar amount or a percentage of the amount owed, not to exceed 40% of the amount owed.

**Returned Payment Handling Charge.** We may assess a charge not exceeding $20 for each payment instrument you present to us which is dishonored or returned to us for any reason. In addition, with respect to such dishonored or returned payment instruments, you authorize us to initiate ACH debit entries for the amount of such payment and you authorize the Depository to debit the same to your deposit account. You agree to be bound by and comply with the Rules of the National Automated Clearing House Association in effect from time to time. You agree that our ACH authority described in this section is coupled with an interest and is irrevocable until all of your obligations under this Note are satisfied.

**Sale of Repossessed Property.** If we send you a written notice of sale at least ten (10) days before selling the repossessed Property, you agree that the notice will have been sent within a reasonable time of the sale. If you do not redeem the Property by the date on the notice, we can sell the Property. The sale proceeds, less our costs and expenses related to taking the Property, holding it, preparing it for sale and selling the Property and any attorney fees and court costs as identified in the Collection Costs section, will be used to pay the amount you owe on this Note. Any money left will be paid to you unless the law requires that we pay it to someone else. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the Property. If the sale proceeds are not enough to pay off this Note and costs, you will pay what is still owed to us, to the extent allowed by law. If you do not pay this amount when asked, you may also be charged interest at the Interest Rate, not to exceed the highest lawful rate, until you pay all amounts due under this Note.

**General.** This Note shall be governed by and construed in accordance with the laws of the State of Utah and Federal law pursuant to 12 USC § 1831d. Any provision hereof held by a court to be invalid shall not affect the remainder of this Note. Waiver of any default shall not constitute a waiver of subsequent default. The obligations of all persons signing this Note as borrowers or co-borrowers are joint and several. You may not assign this Note except with our prior written consent, and subject to the foregoing this Note shall be binding upon the heirs, personal representatives, successors, and assigns of the parties hereto. Unless otherwise required by applicable law, any written notice that we are obligated to send you hereunder shall be sufficient if sent by regular mail, postage prepaid, to your address shown on page one (1) (or any more recent address if you have advised us of such in writing). We do not have to repossess the Property or exercise any of our other rights before collecting from you. You agree to give us updated financial information any time we request it. You waive demand, presentment, protest, notice of dishonor and notice of protest to the extent permitted by law. This Note constitutes the entire agreement between you and us and may not be altered or amended except by a writing signed by both you and us. As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Interest after Maturity. To the extent permitted by applicable law, you further agree to pay interest at the Interest Rate, not to exceed the highest lawful rate, on any amounts which remain unpaid after the maturity of this Note, either by lapse of time or by acceleration, or upon judgment in a court of law.

Notice of Limited Agency. This Note is a direct loan from us to you. For your convenience, we have asked the Seller of the Property you are purchasing with the proceeds of this Note to prepare and obtain your signature on this Note. Seller has no authority to approve or make this Note. Seller is not our agent in connection with the sale of the Property or in connection with any down payment or trade-in arrangements or for any purpose whatsoever other than for preparing and obtaining your signature on this Note. No employee or agent of Seller is authorized to make any promises or agreements with you about this Note. No oral or written promises or agreements between you and Seller about this Note are enforceable. Any representations, promises, or agreements between you and Seller in connection with the Property or any down payment or other matter in connection with the purchase must be resolved between you and Seller. If you have any questions about Seller's authority in connection with this Note, please contact us at the address on page one (1) of this Note.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN NOTE MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

ARBITRATION. Either you or we may choose to have any dispute arising under this Note resolved by binding arbitration under the rules then in effect of the American Arbitration Association ("AAA") or any other arbitration organization you choose and that we approve in writing ("the Arbitration Organization"). The arbitration shall be conducted under the then current rules of the Arbitration Organization and is governed by the Federal Arbitration Act. Either of us may elect to arbitrate even if an action has been filed in court, so long as no judgment has been rendered; provided however, that we will not elect to arbitrate any individual claim (as opposed to any class action claim), not including any counter-claims, you bring against us with a total amount in controversy of $10,000 or less. A single arbitrator shall hold the arbitration hearing at a location near where you signed this Note (or, if you have since moved, in the federal judicial district where you live). The arbitrator shall apply applicable law. The arbitrator's award shall be final and binding on all parties, except that in the event of an award in excess of $100,000, the nonprevailing party may request a new arbitration under Arbitration Organization's rules by a three-arbitrator panel. Either party may enter judgment on the award in the highest local, state or federal court or before any administrative body. We agree to pay any initial filing fee you may owe should you choose to arbitrate. Additionally, we agree for only the first day of arbitration to pay the following fees up to a maximum of $2500 in the aggregate: the arbitrator's fee, those reasonable arbitration expenses or costs (excluding attorney fees) assessed to you that you would not pay if you had brought a dispute in court, and any other reasonable expense or cost unique to the arbitration process. We will also pay other amounts an arbitrator determines that we must pay in order to assure the enforceability of this arbitration provision. This arbitration provision shall survive termination or expiration of this Note. NO CLASS ACTION ARBITRATION MAY BE BROUGHT OR ORDERED UNDER THIS ARBITRATION PROVISION AND THERE SHALL BE NO JOINDER OF PARTIES, EXCEPT FOR JOINDER OF PARTIES TO THIS NOTE. IF EITHER YOU OR WE CHOOSE TO ARBITRATE, THE FOLLOWING WARNINGS APPLY: ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION; YOU WILL GIVE UP THE RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; YOUR ABILITY TO COMPEL OTHER PARTIES TO PRODUCE DOCUMENTS OR BE EXAMINED WILL BE MORE LIMITED IN ARBITRATION THAN IN A LAWSUIT; AND, YOUR RIGHTS TO APPEAL OR CHANGE AN ARBITRATION AWARD IN COURT WILL BE VERY LIMITED. You and we agree that this Note evidences a transaction in interstate commerce. This Arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. and not by any state arbitration law.

If you don't want this arbitration provision to apply, you may reject it by mailing us at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121 a written rejection notice which identifies this Note and tells us that you are rejecting this arbitration provision. A rejection notice is effective only if it is signed by the borrower and all co-borrowers and the envelope the rejection is sent in has a postmark of 14 days or less after the date of this Note. The rejection of this arbitration provision will not affect any other provision of this Note or the status of your Note. If you don't reject this arbitration provision, it will be effective as of the date of this Note.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT NOTE IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL BE LIMITED TO AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**NOTICE TO BORROWER**
1. DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS BLANK SPACES.
2. YOU ARE ENTITLED TO AN EXACT COPY OF THE NOTE YOU SIGN.
3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY.
4. YOU, THE BORROWER, ACKNOWLEDGE THAT YOU HAVE RECEIVED, AT THE TIME OF EXECUTION, A FULLY COMPLETED COPY OF THIS NOTE.

YOU ACKNOWLEDGE THAT THIS NOTE CONTAINS AN ARBITRATION CLAUSE, AND THAT YOU HAVE READ THE CLAUSE AND UNDERSTAND AND AGREE TO IT.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE NOTE BEFORE YOU SIGN IT.

BORROWER: _[signature]_  DATE: 05/02/2015

CO-BORROWER: N/A  DATE: N/A

# CERTIFICATE OF TITLE

| | | |
|---|---|---|
| VESSEL | TX-1484-AR | Title Date: 06/16/2015 |

Title Number: B201506163189

| Make | Year Built | Mdl/Prog Year | Vessel Type | Fuel Use | Length |
|---|---|---|---|---|---|
| YAMAHA | 2008 | 2008 | OPEN | GASOLINE | 23' 0" |

| Identification Number | Primary Color | Secondary Color | Hull Material | Propulsion |
|---|---|---|---|---|
| YAMC1551B808 | BLACK | WHITE | FIBERGLASS | INBOARD |

Outdrive Number(s):

Horsepower: 160 / 160

OWNER: LARRY S ROGERS

DATE OF LIEN: 05/02/2015

1st LIEN HOLDER:
MEDALLION BANK
1100 EAST 6600 SOUTH STE 510
SALT LAKE CITY UT 84121

1st LIEN RELEASED _____
BY _____ DATE _____
AUTHORIZED AGENT

CO-OWNER(S):

THIS TITLE MUST BE SIGNED IN INK UPON RECEIPT

_____
SIGNATURE OF OWNER OR AGENT

_____
SIGNATURE OF CO-OWNER OR AGENT

THE APPLICANT HAS STATED UNDER OATH THAT HE/SHE IS THE OWNER OF THE VESSEL DESCRIBED ABOVE, SUBJECT TO THE HEREIN DESCRIBED LIEN(S) AND ENCUMBRANCE(S) AND NO OTHER, AND IT APPEARS UPON THE OFFICIAL RECORDS OF THE DEPARTMENT THAT AT THE DATE OF ISSUANCE OF THIS CERTIFICATE, SAID VESSEL IS SUBJECT TO THE LIEN(S) HEREIN BEFORE ENUMERATED.

KEEP THIS CERTIFICATE OF TITLE IN A SAFE PLACE

WHEN VESSEL/OUTBOARD MOTOR IS SOLD titleholder must assign on back and furnish this title to purchaser. Purchaser must apply for title in their name within 20 days after the date of sale.

DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

PWD Y004-A0800

**VOID IF ALTERED OR ERASED**

## LIMITED POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that **Medallion Bank** together with its respective affiliates, and subsidiary corporations and entities (collectively "Medallion Bank"), in connection with certain security interests and liens acquired by or created in the name of Medallion Bank, has and hereby affirms that it has made, constituted and appointed, and by these presents does make, constitute and appoint Systems & Services Technologies, Inc. ("SST" or "attorney-in-fact"), having its principal place of business at 4315 Pickett Road, St. Joseph, Missouri 64503, Medallion Bank's true and lawful attorney-in-fact and in Medallion Bank's name, place and stead to act solely for the purpose of performing any or all of the acts described herein in connection with any account serviced by SST pursuant to the Servicing Agreement dated as of May 1, 2004 (the "Servicing Agreement").

FIRST:   To execute and/or endorse certificates of title, applications for certificates of title or other documents necessary or appropriate to evidence the assignment, sale, transfer, acquisition or disposition of vehicles or Medallion Bank's interest in vehicles including, but not limited to, vehicles to be sold at auction, or to be otherwise liquidated.

SECOND:   To endorse, sign, deliver and deposit any and all checks, drafts or instruments of deposits issued by obligors, insurance companies, vendors or third parties. Such instruments may only be executed and deposited by the attorney-in-fact if the same represent funds paid on any account serviced by the attorney-in-fact pursuant to the Servicing Agreement.

THIRD:   To execute and/or endorse any loan agreement, promissory note, security agreement, financing statement, certificate of title or other document, instrument or agreement, or any amendment, modification or supplement of any of the foregoing, and perform any act and covenant in any way which Medallion Bank itself could do which is necessary or appropriate to modify, amend, renew, extend, terminate and/or extinguish: (i) any and all liens and security interests granted to or created in favor of Medallion Bank in or affecting vehicles; or (ii) any indebtedness secured by any such lien or security interest or any right or obligation of the obligor of such indebtedness secured by a vehicle, in each case upon such terms and conditions as set forth in the Servicing Agreement, necessary or appropriate in connection with such modification, amendment, renewal extension, termination and/or extinguishment.

FOURTH:   To agree and to contract with any person, in any manner and upon terms and conditions as set forth in the Servicing Agreement, necessary or appropriate for the accomplishment of any such modification, amendment, renewal, extension, termination and/or extinguishment of any such lien, security interest, indebtedness, right or obligation with respect to vehicles; to perform, rescind, reform or modify any such agreement or contract or any similar agreement or contract made by or on behalf of

1

Medallion Bank; to execute, acknowledge, seal and deliver any contract, agreement, certificate of title or other document, agreement or contract or any similar agreement or document creating, evidencing, securing or secured by any such lien, security interest, indebtedness, right or obligation; and to take all such other actions and steps, pay or receive such moneys and to execute, acknowledge, seal and deliver all such other certificates, documents and agreements as said attorney-in-fact may deem necessary or appropriate to consummate any such modification, amendment, renewal, extension, termination and/or extinguishment of any such security interest, lien, indebtedness, right or obligation or in furtherance of its obligations as set forth in the Servicing Agreement and of any of the transactions contemplated by the foregoing.

FIFTH: To commence a legal proceeding in the name of Medallion Bank to enforce a receivable, or file a claim in any obligor insolvency action in connection with its duties and obligations under the Servicing Agreement. If attorney-in-fact exercises this right, guaranty shall thereupon be deemed to have automatically assigned such receivable to attorney-in-fact, which assignment shall be solely for the purpose of collection/recovery in connection with its duties and obligations under the Servicing Agreement.

SIXTH: With full and unqualified authority to delegate any or all of the foregoing powers to any person or persons whom said attorney-in-fact shall reasonably select; provided however, such delegation shall not in any way absolve attorney-in-fact's duties and obligations to Medallion Bank as set forth in the Servicing Agreement.

SEVENTH: This Power of Attorney shall not be affected by the subsequent dissolution or disability of Medallion Bank or its authorized representatives.

EIGHTH: To induce any third party to act hereunder, Medallion Bank hereby agrees that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that any notice of revocation or termination hereof or other revocation or termination hereof by operation of law shall be ineffective as to such third party.

[THE BALANCE OF THIS PAGE IS BLANK]

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney on behalf of Medallion Bank as of this 4th day of May, 2004.

Medallion Bank

By: _____
Name: JOHN M. TAGGART
Its: PRESIDENT

ACKNOWLEDGMENT

STATE OF Utah )
                        ) ss
COUNTY OF Salt Lake )

NOTARY PUBLIC
MARTINA WALKER
5482 S Redwood Rd
Taylorsville Utah 84123
My Commission Expires
October 15, 2007
STATE OF UTAH

This instrument was acknowledged, sworn to and subscribed before me as of the date above written by JOHN M. TAGGART on behalf of Medallion Bank, as its duly authorized representative.

_____
Notary Public

My commission expires:
10/15/07

3